# Richmond

## COMMONWEALTH EX. REL. NORFOLK-HAMPTON ROADS CO. v. BUSH BLUFF RAILWAY COMPANY

### March 12, 1914.

#### Absent, Cardwell, J.

1. QUO WARRANTO—*Demurrer—Trial on Merits—Case at Bar—Corporations.*—The information in the nature of a writ of *quo warranto* filed in the case at bar, alleging that defendant's charter was obtained for a fraudulent purpose and seeking to have the same annulled, presents many interesting questions of novelty and importance which can be more satisfactorily dealt with when an issue is made and proof offered than by a ruling upon a demurrer, hence it was error to have sustained the demurrer.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk. Judgment for the defendant. Informant assigns error.

*Reversed.*

The following order was entered by the Court of Law and Chancery of the city of Norfolk, on the 19th day of March, 1913.

The Commonwealth on the information of Norfolk-Hampton Roads Company, Plaintiff.

*v.*

Bush Bluff Railway Company, a corporation *de facto* having its principal office in the City of Norfolk, Virginia, Defendant.

## INFORMATION IN THE NATURE OF QUO WARRANTO

This day came Norfolk-Hampton Roads Company, a corporation chartered under the laws of the State of Virginia, by its attorney, and in the name of the State of Virginia asked leave to file an information in the nature of a writ of *quo warranto* against the Bush Bluff Railway Company, a corporation *de facto* organized under the laws of Virginia, and having its principal office in said city of Norfolk, Virginia, for the cause and on the ground that said Bush Bluff Railway Company did obtain its charter of incorporation from the State Corporation Commission of Virginia for a fraudulent purpose; and the said Norfolk-Hampton Roads Company at the time of the said application presented to the court the information it purposes to file. And it appearing to the court that said Norfolk-Hampton Roads Company is a person interested in the subject matter of said information, and the court being of opinion that the matters stated in said information are sufficient in law to authorize the same to be filed, it is ORDERED that the said information by and the same is accordingly filed. And the clerk of this court is directed to issue a summons against said Bush Bluff Railway Company, a *de facto* corporation, the defendant named in said information, to answer the said information, which summons shall be returnable to the next term of this court. But the said summons shall not be issued by the clerk until said Norfolk-Hampton Roads Company shall have given bond with sufficient surety to be approved by the clerk, in the penalty of $500.00 conditioned for the payment by said Norfolk-Hampton Roads Company of all such costs and expenses as may be incurred by the State of Virginia in prosecution of the said information,

in case the same shall not be recovered from and paid by the defendant therein.

## INFORMATION.

Virginia:

In the Court of Law and Chancery of the city of Norfolk.

Be it remembered, That Norfolk-Hampton Roads Company, a corporation chartered and existing under the laws of the State of Virginia, which for and in the name of the State of Virginia prosecutes in this behalf, cometh on the 19th day of March, A. D. 1913, into the Court of Law and Chancery of the city of Norfolk, and giveth the court here to understand and be informed:

That Bush Bluff Railway Company, a corporation *de facto* organized under the laws of Virginia, and having its principal office in said city of Norfolk, did heretofore, to-wit: on the 3rd day of August, 1911, obtain its charter of incorporation from the State Corporation Commission of Virginia, for a fraudulent purpose, as hereinafter alleged; that the facts and circumstances leading to the application for the said charter of incorporation and the purpose for which the same was obtained were and are as follows: In the spring of the year 1911 a certain real estate corporation known as Bush Bluff Company, Incorporated, owned and still owns a tract of land in the county of Norfolk, Virginia, on the shore of the Elizabeth river or Hampton Roads, known as Sandy Point. The said tract of land contains eighty-five (85) acres, more or less, consists chiefly of a sand spit extending southerly from the main land at the mouth of Tanner's creek, and practically no use has ever been made of it. The said Bush Bluff Company, Incorporated, is a real estate company, and purchased the said land and holds the same for merely

speculative purposes. The said Norfolk-Hampton
Roads Company in the year 1911 owned and still owns
two tracts of land situated in said county of Norfolk
on the shore of Hampton Roads, the one adjoining the
said Sandy Point tract on the north and the other
lying near thereto and slightly further north. The
location and relative positions of said three tracts of
land being shown on the plat filed herewith as Exhibit
A, and asked to be treated as a part of this information.
One Fergus Reid of Norfolk, Virginia, and one Raymond
Dupuy of the same place were in the year 1911 and still
are among the principal, if not the principal, stock-
holders of said Bush Bluff Company, Incorporated.
Because of his interest in the said corporation, and in
order to provide an outlet for the said Sandy Point
property, the said Fergus Reid in the spring of the
year 1911 applied to said Norfolk-Hampton Roads Com-
pany, the relator, for a right of way for a railroad
track leading from said Sandy Point property across
relator's said two tracts of land above mentioned.
Relator refused to grant such right of way, and the said
Fergus Reid having failed to obtain said right of way,
resolved to procure a railroad charter in order to con-
demn and take the same for the purposes herein alleged.
And thereupon the said Fergus Reid and the said Ray-
mond Dupuy, either one or both of them, caused a right
of way for a railroad to be surveyed and laid out from
said Sandy Point property through and over the said
two tracts of land of the relator and other lands, to a
point at or near the property of the Virginian Railway
Company at Sewall's Point. The said right of way was
sixty (60) feet in width and located along the shore of
the said two tracts of relator and of other tracts
through which it passed, within a few feet of mean low
water mark. The grade line established by the said

survey was at an elevation of about thirteen (13) feet above the average high tide. The said right of way was thus located in such position and at such a grade that any railroad corporation owning the same would hold the key to the water front situation and would practically control the entire water front with the valuable riparian rights connected therewith from said Sandy Point property to the property of the Virginian Railway Company, a distance of nearly two (2) miles. Relator believes and charges that the purposes of said Reid and Dupuy in seeking said right of way, and locating the same in the manner aforesaid, was two-fold, viz., (1) To provide an outlet for said Sandy Point property in order to facilitate the sale thereof on the theory of its having potential railway connections; and (2) To obtain by means of said right of way and hold practical control of said water front and riparian rights without having to pay the value thereof.

And afterwards, pursuant to their said plan and purpose the said Fergus Reid and said Raymond Dupuy, with certain associates hereinafter named, on the second day of August, 1911, executed and acknowledged, and on the third day of August, 1911, filed in the office of the State Corporation Commission of Virginia certain articles of association for the incorporation of a railway company, to be known as Bush Bluff Railway Company, for the alleged purpose of constructing, maintaining and operating a railroad from a connection with the Virginian Terminal Railway Company's line near Sewall's Point, in said county of Norfolk, to Sandy Point on Tanner's creek, in said county of Norfolk, Virginia, the estimated length of said line of railroad to be two (2) miles, the minimum capital stock of said corporation to be $1,000, the maximum capital stock to be $50,000.

The officers of said Bush Bluff Railway Company as set out in said articles of association are as follows:

FERGUS REID,
President.

RAYMOND DUPUY,
Vice-President.

F. W. RUSSELL,
Secretary and Treasurer.

The directors of said corporation as shown by said articles of association are the three persons above named and H. T. Campbell, H. W. Walker, G. A. Wingfield, and E. E. Gardner. The said Reid and his associates having apparently complied with the formal requirements of the law in this behalf, a charter was issued to them by the State Corporation Commission as a matter of course.

The said Fergus Reid, president and chief promoter of the said Bush Bluff Railway Company, is the same Fergus Reid, who, as above alleged, is one of the principal stockholders of said Bush Bluff Company, Incorporated; the said Raymond Dupuy is the same Raymond Dupuy who is one of the principal stockholders of Bush Bluff Company, Incorporated. The said H. W. Walker, G. A. Wingfield, and E. E. Gardner, were at the time of obtaining said charter employees of the Virginian Railway Company of which the said Raymond Dupuy was and is general manager, and with the said H. T. Campbell, who was and is a close friend of the said Reid and Dupuy, are believed and charged to have no interest in said Bush Bluff Railway Company, but to have united in the execution of said articles of association and served on said board of directors merely for the purpose of making up the required number.

On said third day of August 1911, the said Bush Bluff Railway Company was organized by the said incor-

porators with the minimum capital stock of $1.000. Three shares of said capital stock of the par value of $100 each were issued to said Fergus Reid, two to the said Raymond Dupuy, and one share each to the said F. W. Russell, H. T. Campbell, H. W. Walker, G. A. Winfield, and E. E. Gardner. Relator is informed, believes and charges that the shares of the said F. W. Russell, H. T. Campbell, H. W. Walker, G. A. Wingfield and E. E. Gardner, were given to them merely as qualification shares and were paid for in part by the said Fergus Reid and in part by the said Raymond Dupuy.

On the same day, to-wit: on the third day of August, 1911, the board of directors of said Bush Bluff Railway Company adopted the right of way previously surveyed and located by or on behalf of the said Fergus Reid and the said Raymond Dupuy as above alleged, and afterwards, to-wit: in October, 1911, the said Bush Bluff Railway Company instituted condemnation proceedings in the Circuit Court of the county of Norfolk for the purpose of condemning and taking the said right of way over said two tracts of land of the relator. In the said proceedings, over the objection of said relator, commissioners were appointed who subsequently made their report, awarding to said relator the sum of $7,000 as the value of the land to be taken and damages to the residue of said tracts, and said relator excepted to the said report because of the inadequacy of said award. Although said sum was grossly inadequate and excepted to by relator on that account, yet it amounted to seven times the total capital and assets of said Bush Bluff Railway Company. The said Bush Bluff Railway Company failed to pay the amount of the said award into court within the time prescribed by statute, and on account of such failure the said proceedings were afterwards, to-wit: in October,

1912, dismissed on motion of the relator. The said Bush Bluff Railway Company is now, as relator is informed, believes and charges, about to institute new proceedings for the purpose of condemning and taking the said land. Relator has already been put to great expenses by said Bush Bluff Railway Company in defending said wrongful proceedings, and such new proceedings will in the circumstances be vexatious and annoying and will wrongfully put relator to great additional expense. Moreover, the taking of said strip of land as proposed in such proceedings, should they succeed, will deprive relator's said two tracts of land of their chief element of value, in that it will cut off the main body thereof from free access to the water front belonging thereto, and practically denude the said properties of their valuable riparian rights, and thus will work irreparable injury to relator. Relator, therefore, has an interest in the subject matter of this information.

At the time of the incorporation of the said Bush Bluff Railway Company there was not, nor has there been at any time since, any public call or demand whatsoever for such a railroad as is proposed by said Bush Bluff Railway Company, or for any railroad of any kind between the two terminal points fixed in said charter. For although the lands along said proposed route are of very great value, chiefly on account of the riparian rights annexed thereto, yet the territory through which such proposed railroad is to run is devoid both of inhabitants and industries and will afford neither passengers nor freight to be transported by such railroad. There is not a single enterprise or business of any kind or character located on said Sandy Point property or at any other point along said proposed line nor any inhabitants, to be served by such a railroad. Moreover

said Reid and Dupuy and their associates had not at the time said charter was obtained nor have they now any reason to believe that such a railroad as is mentioned in said charter would be a means of developing said lands or of locating any industries thereon. On the contrary, as said Reid and Dupuy well knew, conditions existed at the time when said charter was obtained and still do exist with respect to transportation about the harbor of Norfolk and Portsmouth on which said lands are located as aforesaid which would render such a railroad wholly ineffectual for such purposes; in that there then was and still is a railway company known as the Norfolk and Portsmouth Belt Line Railway Company, which then operated and still operates a belt line railway extending from Port Norfolk at the mouth of the Western branch of the Elizabeth river, around the city of Portsmouth, across the Southern branch of said river, to South Norfolk, and up said Southern branch for several miles; but not extending across the Eastern branch of said river so as to reach the Norfolk side of said harbor on which side the said lands are located. There is and was when said charter was obtained a traffic arrangement between the said Norfolk and Portsmouth Belt Line Railway Company and other railroads centering about the said harbor whereby the switching charges of said Norfolk and Portsmouth Belt Line Railway Company are absorbed by the connecting carrier, so that industries located on said Norfolk and Portsmouth Belt Line Railway Company can and do ship out carloads of freight over the other railroads and receive loaded cars from such railroads without having to pay anything for the handling of such cars by said Norfolk and Portsmouth Belt Line Railway Company; and thus have for all practical purposes the advantage of being located on all of the railroads connecting with said

Norfolk and Portsmouth Belt Line Railway. This gives to industries so located such an obvious advantage over those not so located that all new industries about the said harbor naturally seek Belt Line locations. Any railroad built in the proposed location of said Bush Bluff Railway will be under the influence and subject to the handicap of said conditions and no industry located thereon could possibly compete with industries located on said Norfolk and Portsmouth Belt Line Railway. Such a railroad will have and can have no Belt Line connections. The total length of said proposed railroad as shown by the charter is about two (2) miles and it will be distant from said Norfolk and Portsmouth Belt Line Railway about eight (8) miles at the nearest point, all of which conditions were well known to the said Reid and Dupuy at the time of procuring said charter. Such a railroad, therefore (except in theory only), will owe no duties to the public which might be enforced by competent public authority for the reason above alleged, viz., that there is and will be no business whatsoever for such a railroad to do. As above alleged, the said Bush Bluff Railway Company was organized with a capital stock of only $1,000, and had and, relator believes and charges, has no other assets. It has no track, no equipment, and no business either present or prospective. The principal office of the said Bush Bluff Railway Company as fixed in sai dcharter is in the city of Norfolk, Virginia. Relator believes and charges that said Reid and his associates had not at the time said charter of incorporation was obtained and have not now, nor has the said Bush Bluff Railway Company, any intention of building and operating a *bona fide* railroad for the use of the public, but only of complying with the mere form of law and doing so much only in the way of construction as may be necessary to enable them to take

and hold the said right of way; that the said railway charter and the organization effected thereunder were a mere sham and pretense obtained and effected for the purpose of enabling the said Reid and associates to use the State's power of eminent domain in order to get, by condemnation, a right of way which the said Reid had failed to get by contract, the real purpose being to promote the private interests of said Reid and Dupuy as aforesaid, and by means of the said right of way to obtain and hold control of the water front between said Sandy Point property and the property of the Virginian Railway at Sewell's Point, with the valuable riparian rights connected therewith. Relator, therefore, charges that the obtaining of the said charter of incorporation in the circumstance above alleged amounted to a fraud upon the laws of the Commonwealth of Virginia, and that in consequence the said Bush Bluff Railway Company became and is a *de facto* corporation only, and is not and has never been a *de jure* corporation.

Wherefore, The said Norfolk-Hampton Roads Company saith that said Bush Bluff Railway Company did obtain its said charter of incorporation from the State Corporation Commission of Virginia for a fraudulent purpose, and that the said company, the liberty and privilege of being a corporation, possessing the power of eminent domain, by reason of said wrongful purpose for the space last aforesaid, in the city aforesaid, upon said Commonwealth of Virginia, did and still does usurp against the form of the statute and against the peace and dignity of the Commonwealth.

Whereupon, The said Norfolk-Hampton Roads Company which for and in the name of the Commonwealth of Virginia in this behalf prosecutes for the said Commonwealth, prays the consideration of the court herein the premises, and that due process of law may be

awarded against said Bush Bluff Railway Company to make the said company answer to the said Commonwealth touching and concerning the premises aforesaid, and that the Commonwealth shall have such judgment against said Bush Bluff Railway Company as is appropriate and authorized by law.

And as in duty bound, it will ever pray.

NORFOLK-HAMPTON ROADS COMPANY ,
by HARRY L. LOWENBERG,.
Secretary.

H. H. RUMBLE, p. q.

State of Virginia
    City of Norfolk, To-wit:

Before the subscriber, a notary public within and for the city aforesaid, in the State of Virginia, personally came Harry L. Lowenberg, and made oath before me in said city that he is secretary of Norfolk-Hampton Roads Company, the relator in the foregoing information, and that the facts stated in the said information are true to the best of his knowledge, information and belief.

Given under my hand this 18th day of March, 1913.

My commission expires Sept. 1, 1913.

WILLARD B. BLACK,
Notary Public.

### DEMURRER

Virginia:

    In the Court of Law and Chancery of the city of Norfolk.

*Commonwealth of Virginia, by Norfolk-Hampton Roads*
  *Company,*
            v.
*Bush Bluff Railway Company.*

Information in the nature of a writ of *quo warranto.*

The Bush Bluff Railway Company comes and says that the information in the nature of a writ of *quo warranto* filed against it by the Norfolk-Hampton Roads Company, in the name of the State of Virginia, is not sufficient in law, and as grounds for said demurrer, sets forth as follows:

(1) The said information in the nature of a writ of *quo warranto* does not state facts upon which, under the law, an information in the nature of a writ of *quo warranto* may be awarded and prosecuted.

(2) It does not appear from the said information that the Norfolk-Hampton Roads Company is an interested person at whose instance, in accordance with the statute in such case made and provided, an information in the nature of a writ of *quo warranto* will lie.

(3) An information does not lie at the relation of a party interested against a railroad company on the ground that its charter was obtained for a fraudulent purpose.

(4) The statutes of Virginia, so far as they may be construed to allow proceedings for the forfeiture of a charter on any ground other than non-user or mis-user thereof, are unconstitutional.

WALTER H. TAYLOR,<br>Counsel for Bush Bluff Railway. Co.

*H. H. Rumble,* for the plaintiff in error.

*W. H. Taylor,* for the defendant in error.

By the Court.

The Commonwealth of Virginia, at the relation of Norfolk-Hampton Roads Company, filed its information in which it charges that the Bush Bluff Railway Com-

pany had obtained its charter of incorporation from the State Corporation Commission for a fraudulent purpose, and stating the grounds upon which it based that charge. The Bush Bluff Railway Company demurred to the information and filed its grounds of demurrer; and the cause coming on to be heard before the Court of Law and Chancery of the city of Norfolk, the demurrer was sustained and the information dismissed; and thereupon a writ of error was awarded upon the petition of the Norfolk-Hampton Roads Company.

The court is of opinion that the demurrer should have been overruled. The information presents many interesting questions of novelty and importance. The court is of opinion that these questions may be more satisfactorily dealt with when proof is adduced in support of the allegations of the information, on the one hand, and such plea as the defendant, Bush Bluff Railway Company, may enter upon the other. Therefore, it is considered by the court that the judgment complained of be reversed, and the cause remanded for further proceedings to be had therein in order to a final judgment upon the merits.

*Reversed.*